## LEWIS JOHNSON ET AL., RESPONDENTS, *v.* MYRON H. CLARK ET AL., APPELLANTS.

*Draft—Promise to accept—Authority.*

An agreement by telegram to accept a draft to be drawn upon the party sending the despatch, by the party named therein, is equivalent to an acceptance of such draft.

Authority to draw at twenty days' sight is not an authority to draw at twenty days from date.

. But a failure to make the right form of the draft does not preclude the party from making a second draft, so as to comply literally with the authority to draw.

THIS was an action to charge the Defendants as acceptors of a draft, upon a written promise to accept, under the statute (1 R. S. 768, § 8). The promise in this case was a telegram from the Defendants in New York, to one Ingraham at Washington, authorizing him to draw on them for $95, at twenty days' sight. Ingraham drew for the sum named, at twenty days *from date.* The Plaintiffs discounted the draft on the faith of the Defendants' telegram, and the draft was presented to Defendants, who refused acceptance because it did not conform to the authority to draw.

This draft was dated June 4, 1859—the day of the date and receipt of the telegram. On the 20th of August following, the Plaintiffs wrote the Defendants, asking an explanation of the non-acceptance of the draft, stating that they had cashed it upon the faith of their telegram, and intimating that legal proceedings might be resorted to, to collect it.

. The Defendants did not answer this letter, but immediately wrote Ingraham as follows:

"NEW YORK, August 22d, 1859.

"B. F. INGRAHAM, ESQ.—*Dr. Sir:*— . . . . We have a letter from Messrs. Lewis Johnson & Co., bankers, of your city, relating to your draft on us, dated some time since.

"You and Mr. Lomax gave us positive assurance that the draft

which we made you a small advance on when you were here, should be paid at maturity. Such was not the case. We therefore feel that you should pay the small advance which we made, and settle the matter with your Washington bankers, and we will hand you back Mr. Lomax's draft. What we did was to accommodate you, and we hope you will prevent our having any trouble in the premises, and save us from loss. We shall rely upon your seeing Messrs. Lewis Johnson & Co., and settling the matter with them. . . . . .

" Yours truly,

"CLARK & FAULKNER."

There is no proof that this letter was ever communicated to the Plaintiffs.

About the middle of March, 1860, the Plaintiffs procured a second draft from Ingraham, on the Defendants, for the same amount, at twenty days' sight, which was dated "June 8th, 1860"—intended, probably, for June 8th, 1859—and thereupon cancelled and gave up to him his former draft.

This second draft was presented to the Defendants on the 15th day of March, 1860, and acceptance was refused. It does not appear that the Defendants at any time had funds of Ingraham's in their hands. The consideration of their promise to accept for him was the Lomax draft referred to in their letter, which, it seems, was not collected.

This action was brought on the second draft above described. The Judge at the Circuit dismissed the complaint.

The General Term ordered a new trial, and from that order the Defendants appeal to this Court, giving the usual stipulation for judgment absolute in case of affirmance.

*Edward Fitch* for Appellants.

*John N. Whiting* for Respondents.

DWIGHT, J.—The statute upon which this action is based provides that "An unconditional promise, in writing, to accept a bill before it is drawn, shall be deemed an actual acceptance in favor

of every person who, upon the faith thereof, shall have received the bill for a valuable consideration."

The telegraphic authority to draw was an unconditional promise to accept, within the statute (Ulster Co. Bank *v.* McFarlan, 5 Hill, 432); and, on the authority of the same case, it is conceded that the promise covered only a draft at twenty days' sight, and that the Defendants were not bound to accept Ingraham's first draft, which was payable twenty days from date. So the Plaintiffs seem to have learned at some time subsequent to the dishonor of the first draft, and hence they procured the second one.

In the meantime the Defendants wrote Ingraham the letter of the 22d of August, which the learned Judge at the Circuit held to be a revocation of the authority to draw. But it is clear that this letter can have had no effect upon the rights of the Plaintiffs. It never was communicated to them, and if it had been it raised no question of the Defendants' liability to them, but contained, rather, an implied admission of such liability, and an appeal to Ingraham to protect them against it. Nor was it in the power of the Defendants to revoke their promise after the Plaintiffs had parted with their money on the faith of it.

The statute makes the promise to accept equivalent to an actual acceptance of the bill to be drawn, or, in other words, a constructive acceptance, which may be treated as if it were actually made; and as such, it can no more be revoked after money has been advanced on the faith of it than an actual acceptance written on the face of a bill.

I think the liability of the Defendants was fixed when the Plaintiffs paid their money upon this constructive acceptance of the Defendants; and that when the first attempt to make a draft, to which that acceptance should apply, proved to be ineffectual, it was the right of the Plaintiffs to have another draft, which should be within the prescribed conditions.

Under other circumstances it might well have been a question whether the time which the Plaintiffs suffered to elapse before the second draft was presented was a reasonable time within which to avail themselves of the promise to accept.

But in this case a draft had been drawn immediately, which was refused as not being within the authority to draw. Then, two months later, the Plaintiffs wrote the Defendants, informing them that they had paid their money for this draft upon the faith of the Defendants' promise to accept it, and asking what their objection to it was.

They had a right to wait for an answer to this letter before procuring another draft ; and it is not for the Defendants to object that they waited too long. They were fully informed of the Plaintiffs' claim upon them ; and I cannot see that they were prejudiced by the delay to enforce it. I have no difficulty in concluding that, under all the circumstances of this case, the Defendants' promise to accept applied to the draft in suit.

The fact that this draft was post-dated was not material. That date was an evident mistake ; and as the draft was payable twenty days from sight, the time of payment was determined by the date of its presentation.

The order of the General Term, reversing the judgment at the Circuit, should be affirmed, and under the Defendants' stipulation judgment absolute should be rendered for the Plaintiffs.

Affirmed.

JOEL TIFFANY,
State Reporter.